**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**COMMERCIAL CREDIT GROUP INC.**                               **PLAINTIFF**

**v.**                               **Case No. 1:15-cv-00093 KGB**

**ALLIANZ GLOBAL CORPORATE & SPECIALTY
NORTH AMERICA a/k/a AGCS MARINE INSURANCE
COMPANY; BATESVILLE INSURANCE AGENCY, INC. d/b/a
COMMUNITY INSURANCE PROFESSIONALS, INC.;
and SWETT & CRAWFORD**                               **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Before the Court is the motion for summary judgment filed by defendant Batesville Insurance Agency, Inc. d/b/a Community Insurance Professionals, Inc. ("Community") (Dkt. No. 45). Plaintiff Commercial Credit Group, Inc. ("CCG"), has responded to the motion, and Community has replied (Dkt. Nos. 52, 55, 57). For the following reasons, the Court grants Community's motion for summary judgment and enters judgment in favor of Community on CCG's claims.

**I.       Factual Background**

Unless otherwise noted, the following facts are taken from Community's statement of material facts not in dispute and CCG's counter-statement of undisputed material facts (Dkt. Nos. 47, 54). The Court notes that Local Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas provides that all material facts set forth in the statement filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party. Local Rule 56.1(c). As such, the Court deems admitted Community's statements of material facts where not controverted by CCG.

CCG is a secured and perfected creditor of several related entities—Uniserve, LLC, Universal Industrial Management, LLC, and Uniserve Construction, Inc. (collectively, "Uniserve")—with a security interest in Uniserve's equipment and any insurance proceeds arising out of the equipment (Dkt. No. 54, ¶ 1). The security agreements between CCG and Uniserve required Uniserve to obtain insurance on CCG's collateral, and additionally, the security agreements required that the insurance policy contain a standard or union mortgage clause designating CCG as an additional insured or lender loss payee (*Id.*, ¶ 2). On October 27, 2009, CCG entered into a security agreement with Uniserve (Dkt. No. 47, ¶ 9). The security agreement included a schedule of equipment to be covered under the required insurance policy which listed a 2004 Caterpillar Material Handler with serial number CDY00316 ("CDY316") and a 2004 Caterpillar Material Handler with serial number CDY00308 ("CDY308") (Dkt. Nos. 54, ¶ 3; 45-7, at 4). The security agreement states that "each policy shall be delivered to the secured party and shall expressly state that insurance as to secured party shall not be invalidated by any act, omission, or neglect of debtor in that the insured shall give 30 days written notice to secured party of any alteration or cancellation of the policy" (Dkt. No. 47, ¶ 9).

The Uniform Commercial Code ("UCC") financing statement filed on October 28, 2009, includes the CDY316 material handler (*Id.*, ¶ 10; Dkt. No. 45-8). The UCC financing statement also states that the collateral is "all accounts, accounts receivable, chattel paper, contract rights, documents, equipment . . . including . . . insurance proceeds" (Dkt. No. 47, ¶ 10).

CCG contends that, on December 31, 2009, Uniserve applied for and obtained a policy of property insurance through Community, that the application included an additional interest schedule which identified CCG as loss payee on the policy, and that the policy covered CCG's collateral, including both CDY316 and CDY308 (Dkt. No. 54, ¶¶ 4-7). The parties agree that, on

April 28, 2010, property coverage was bound for Uniserve with AGCS Marine Insurance Company ("AGCS") by policy number MXI93017792 ("Policy") (Dkt. No. 47, ¶ 1). The confirmation of coverage was issued by Swett & Crawford ("Swett") and listed the broker as Batesville Insurance Agency, Inc. d/b/a Community Insurance Professionals, Inc. (*Id.*). The Policy's equipment list included CDY316 (*Id.*, ¶ 2). CCG contends that the Policy also covered CDY308 (Dkt. No. 54, ¶ 7). The parties agree that the Policy contained a blanket loss payee endorsement (Dkt. Nos. 47, ¶ 11; 54, ¶8). Community maintains that it was not a party to the insurance Policy (Dkt. No. 47, ¶ 12).

On May 20, 2010, Community provided a signed Evidence of Property Insurance form for the Policy that included CDY316 (*Id.*, ¶ 3). The additional interest holder on the form was listed as CCG, and the box for loss payee was marked (*Id.*). Community contends that the Evidence of Property Insurance form states in part that the Evidence of Property Insurance is "issued as a matter of information only and confers no rights upon the additional interest named below" (*Id.*). Community further maintains that the Evidence of Property Insurance form does not amend, extend, or alter the coverage afforded by the Policy (*Id.*).

CCG contends that the Evidence of Property Insurance form provided confirmation that Uniserve obtained insurance naming CCG as loss payee and that the form provided confirmation that both the CDY316 and CDY308 were covered by the Policy (Dkt. No. 54, ¶¶ 10, 11). CCG asserts that CDY316 was covered by $474,409.00 in insurance, and CDY308 was covered by $441,946.00 in insurance (*Id.*, ¶¶ 12, 13). CCG further submits that Policy Endorsement 001 notes the existence of a blanket loss payee and asserts that CCG was the sole loss payee under the Policy during the initial term (*Id.*, ¶¶ 14, 15). CCG alleges that, when Uniserve acquired additional

equipment, it would notify Community through a Policy Change Request and that CCG was listed as the loss payee on the Policy Change Requests (*Id.*, ¶ 16).

On August 29, 2010, CDY316 caught fire (Dkt. No. 47, ¶ 4). On December 9, 2010, Uniserve delivered a sworn proof of loss making claim in the amount of $212,365.45 for CDY316 for Uniserve only (*Id.*, ¶ 5). On December 13, 2010, AGCS issued payment in the amount of $212,365.45 (*Id.*, ¶ 6).

CCG contends that, when CDY316 was destroyed by fire, Community prepared a Property Loss Notice and provided notice of the loss to Swett (Dkt. No. 54, ¶ 17). CCG alleges that Community did not acknowledge CCG's status as loss payee on the Property Loss Notice (*Id.*, ¶18). CCG further contends that, after the initial notice of claim, Community kept apprised of the status of the claim (*Id.*, ¶ 19). CCG submits that Big Rig Claims Service inspected CDY316 and advised that AGCS make recommendation for payment as outlined to the insured and lienholder, if applicable (*Id.*, ¶ 20). CCG claims that Claire Fox, claims adjustor for AGCS, emailed Christian Michaels, attorney for Uniserve, noting the blanket loss payee endorsement on the Policy and requesting the additional loss payee's name for the material handler (*Id.*, ¶ 21). CCG claims that Mr. Michaels denied that there was an additional loss payee on the Policy and that AGCS issued payment to Uniserve two business days later (*Id.*, ¶¶ 22, 23). CCG claims that Cari Ellenberger, a legal specialist for AGCS, later questioned payment to the insured rather than to the loss payee, asking, "Did we have the Acord? It seems to me we should have known?" (Dkt. No. 54, ¶ 24).

On February 16, 2011, material handler CDY308 was destroyed in a fire (*Id.*, ¶ 25). CCG contends that Community prepared a Property Loss Notice that did not acknowledge CCG's status as loss payee and provided notice of the loss to Swett (*Id.*, ¶¶ 26, 27). CCG contends that Community then sent a list of equipment covered by the initial Policy, which included both

CDY316 and CDY308, to AGCS (*Id.*, ¶28). CCG contends that AGCS issued payment in the amount of $431,946.00 on July 18, 2011, made out to both Uniserve and CCG (*Id.*, ¶ 29). CCG contends that it received insurance proceeds for the loss of CDY308 but did not receive insurance proceeds for the loss of CDY316, even though both were covered by the initial insurance Policy (*Id.*, ¶ 30).

Community contends that, on February 17, 2011, Bruce Woodson, then an employee of CCG, sent an e-mail to two other employees of CCG regarding Universal Industrial Management Group, LLC, stating, "Kevin [Statler, sole member and manager of Uniserve] had a similar machine burn about 7 months ago, took 4 months to settle his claim, but insurance paid $212,000.00. Our exposure is down with Kevin. He has one note paying off in 6 months and the not[e] mentioned above has only 14 payments remaining." (Dkt. No. 47, ¶ 7). Before filing the present suit, CCG filed suit against Uniserve in the United States District Court for the Eastern District of Arkansas, Docket No. 1:14-cv-139-JLH (*Id.*, ¶ 8). David Shoop, then Regional Vice President with CCG, executed an affidavit filed in that case which indicated that the notes and lease upon which CCG were suing were all notes and leases originating after the date of payment by AGCS (*Id.*, ¶ 13).

CCG admits that it knew generally that Mr. Statler had previously experienced a fire on another piece of equipment and received insurance proceeds, but CCG denies knowing that the loss was related to its collateral (Dkt. No. 54, ¶ 31). CCG contends that the promissory note and security agreements were extended or modified, that the collateral was cross-pledged, and that the outstanding indebtedness related to the original promissory note (*Id.*, ¶ 32). CCG alleges that it did not know that its loans to Uniserve were no longer secured by CDY316 and continued to extend

financing based on the value of that collateral (*Id.*, ¶ 33).  CCG filed this suit on August 27, 2015 (*Id.*, ¶ 13).

## II.      Standard Of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial.  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## III.     Discussion

CCG alleges five causes of action against Community:  (1) breach of contract; (2) specific performance; (3) promissory estoppel; (4) conversion; and (5) negligence (Dkt. No. 1, at 7-10).  Community contends that it is entitled to summary judgment in its favor on all of CCG's claims.

## A.    Statute Of Limitations

Community filed its motion for summary judgment alleging that CCG's suit is time-barred by Arkansas' three-year statute of limitations (Dkt. No. 45, ¶ 1).  CCG argues that all of its claims are subject to a five-year statute of limitations (Dkt. No. 52, ¶ 1).  The Court will assess the correct statute of limitations that applies to each of the causes of action pleaded by CCG.

In general, Arkansas applies a three-year statute of limitations to tort actions and a five-year statute of limitations to actions based upon written contracts.  *See* Ark. Code. Ann. § 16-56-105; Ark. Code. Ann. § 16-56-11.  Additionally, and specific to suits against insurers, Arkansas Code Annotated § 23-79-202 provides that:

> (a)  An action may be maintained in the courts of this state by an insured or any other person on his or her behalf to recover on any claim or loss arising under a policy of insurance on property or life against the insurer issuing the policy or against the sureties on any bond filed by the insurer as a condition precedent to its right to do business in this state, at any time within the period prescribed by law for bringing actions on promises in writing.

> (b)  Any stipulation or provision in the policy or contract requiring the action to be brought within any shorter time or be barred is void.

Ark. Code Ann. § 23-79-202.

CCG submits that all of its claims in this action arise under a policy of insurance; thus, Arkansas Code Annotated § 23-79-202 and the corresponding five year statute of limitations apply to all of its claims.  The Court rejects CCG's assertion regarding the reach of this statute.  The Court finds that Arkansas Code Annotated § 23-79-202 does not apply to Community as the insurance agent.

Section 23-79-202 provides for a five-year statute of limitations by an insured, or any other person on his or her behalf, arising under a policy of insurance against the insurer issuing the policy.  *See* Ark. Code Ann. § 23-79-202.  Community is not the insurer in this action.  *See e.g.*

*Shelter Mut. Ins. Co. v. Nash*, 184 S.W. 3d 425, 428 (Ark. 2004) (addressing the question of when an insured may bring a claim against his or her insurer and explaining that, "[b]ecause Nash's suit against Shelter is clearly an action by an insured against the insurer to recover a claim arising under a policy of insurance, we hold that the five-year statute of limitations applies."); *Graham v Hartford Life & Accident Ins. Co.,* 677 F.3d 801, 804 (8th Cir. 2012) (applying five-year statute of limitations pursuant to § 23-79-202 in an action by an insured against the insurance company); *Simmons Foods, Inc. v. Indus. Risk Insurers*, 863 F.3d 792 (8th Cir. 2017) (same); *Riggs v. Valley Forge, Ins., Co*., No. 08-03058, 2009 U.S. Dist. LEXIS 89378 (W.D. Ark. Sept. 28, 2009) (same); *Dodge v. Hartford Life & Accident Ins. Co,* 4:16-CV-00719-BRW, 2017 U.S. LEXIS 11928 (E.D. Ark. Jan. 30, 2017) (same). The Court construes § 23-79-202 so that no word is left void, superfluous, or insignificant, and the Court gives meaning and effect to every word in the statute, if possible. *See Ward v. Doss*, 205 S.W. 3d 767, 770 (Ark. 2005). Because Community is not an insurer as required by the statute, the Court finds that Arkansas Code Annotated § 23-79-202 does not govern CCG's claims against Community. Having rejected this argument, the Court will address each of CCG's claims and the appropriate statute of limitations in turn.

### B. Breach Of Contract

The Court finds that Community is not a party to the contract that forms the basis of CCG's breach of contract claim and, thus, not liable for the alleged breach of contract. To prevail on a breach of contract claim under Arkansas law, a plaintiff must show that: (1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the contract required; and (5) the plaintiff was damaged by the breach. *See Foreman Sch. Dist. No. 25 v. Steele*, 61 S.W.3d 801, 807 (Ark. 2001). In its complaint, CCG contends that defendants breached the

contract of insurance with CCG by failing to notify CCG of the claim, by failing to endorse the claim proceeds to CCG as loss payee, and by failing to pay promptly the amounts due to CCG under the Policy (Dkt. No. 1, ¶ 34).  As such, CCG submits that defendants are in material default of the Policy of insurance and seeks to recover damages in the amount of $212,365.45, or the amount paid to Uniserve on the claim under the Policy (*Id.*, ¶ 37).

Community is not a party to the contract CCG alleges in its complaint was breached. Arkansas recognizes the general rule that, where an agent names its principal and does not exceed his authority when contracting on the principal's behalf, the agent is not personally liable upon the contract unless the agent agrees to be.  *McCullough v. Johnson*, 816 S.W.2d 886, 887 (Ark. 1991). Insurance agents are not treated any differently with respect to this rule.  *Vandiver Food Stores v. Insurance Co. of N. Am.,* 909 F. Supp. 618, 625 (E.D. Ark. 1995).  Based on the allegations in CCG's complaint, Community, as the insurance agent, is not liable for breach of the Policy of insurance because Community was not a party to the contract.  *See id*. at 625 (citing *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2nd Cir. 1971) (finding an agent, acting within the scope of its authority, is not liable *ex contractu* for the breach of the contract between its disclosed principal and a third party, even when the breach was the result of its own wrongful act).  CCG points to no record evidence from which a reasonable juror could conclude that Community intended to be bound.  Despite the fact that Community brokered the Policy or served as agent, the Court finds it is not a party to the Policy CCG alleged in its complaint was breached.

The only written contract cited in CCG's complaint is the insurance Policy between Uniserve and AGCS (Dkt. No. 1).  CCG's breach of contract claim concerns an alleged breach of that Policy (*Id*.).  Despite that, CCG argues that it is entitled to bring claim for breach of contract against Community as an intended third-party beneficiary to the Policy.  CCG is correct that, in

Arkansas, a party may recover damages for breach of contract when that party is a third-party beneficiary to the contract. *Stilley v. James,* 60 S.W.3d 410, 415 (Ark. 2001); *Little Rock Wastewater Util. v. Larry Moyer Trucking*, 902 S.W. 2d 760, 763 (Ark. 1995) ("A contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party."). Community is not a party to the contract alleged to have been breached, and thus not a proper party against which to bring a claim for breach of contract. CCG's argument pertaining to its alleged status as a third party beneficiary is misplaced.

There is no evidence in the record of a contract between Uniserve with CCG as loss payee and Community, much less a written contract subject to a five-year statute of limitations. CCG's complaint claims breach of the insurance Policy between AGCS and Uniserve (Dkt. No. 1, ¶ 34 ("The Defendants are in material default of the Policy. The Defendants breached the contract of insurance with CCG by failing to notify CCG of the Claim, by failing to endorse the Claim proceeds to CCG as loss payee, and by failing to promptly pay the amounts due to CCG under the Policy. In addition, Allianz breached the contract of insurance by failing to properly supervise its agents/brokers. . . ."). Even if there were a basis to allege an oral agreement between Uniserve and Community upon which CCG could seek to recover as an alleged third party beneficiary, the statute of limitations under Arkansas law on oral agreements is three years. *Scroggin Farms, Corp. v. Howell*, 226 S.W.2d 562 (Ark. 1950). For reasons explained in this Order, that statute of limitation expired before CCG filed this suit.

While the Court finds that the five-year statute of limitations set forth in Ark. Code Ann. § 16-56-111 and made applicable to policies of insurance between insureds and insurers applies to the claimed breach of the written insurance Policy between AGCS and Uniserve upon which CCG sues in its complaint, the Court finds that Community is not a party to that contract and thus not

liable for breach of that contract.  Therefore, the Court grants summary judgment in favor of Community on CCG's breach of contract claim.

### C.       Specific Performance

CCG contends that, because it seeks a money judgment against Community and the other defendants, specific performance is an appropriate remedy for breach of contract (Dkt. No. 53, ¶¶ 39-41).  Community contends that specific performance by payment of money is not viable against any defendant but particularly not against Community as a non-party to the Policy at issue (Dkt. No. 45, ¶ 3).  Specific performance is an equitable remedy which compels performance of a contract on the precise terms agreed upon by the parties.  *Dossey v. Hanover, Inc*., 891 S.W.2d 67, 69 (Ark. App. 1995).  However, specific performance cannot be decreed where there is no duty to perform.  Because Community was not a party to the Policy and because that is the only contract upon which CCG sues in its complaint, CCG's specific performance claim against Community does not survive summary judgment.  The Court grants Community's motion for summary judgment as to CCG's claim for specific performance.

### D.       Promissory Estoppel

Promissory estoppel applies when:  (1) defendant made a promise; (2) defendant should have reasonably expected plaintiff to act or refrain from acting in reliance on the promise; (3) plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice would result from refusal to enforce the promise.  *Fairpark, LLC v. Healthcare Essentials, Inc.*, 381 S.W.3d 852, 859 (Ark. 2011); Arkansas Model Jury Instructions—Civil 2444 (2016).  Promissory estoppel only applies when the elements of a contract cannot be shown. *Skallerup v. City of Hot Springs*, 309 S.W.3d 196, 201 (Ark. 2009); *see also Mickens v. Correctional Medical Services., Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) (noting that under

Arkansas law, "promissory estoppel is an alternative theory which is not available when an actual contract exists"). CCG contends that it relied on written representations and promises to its detriment (Dkt. No. 1, ¶ 43). CCG specifically alleges that "[d]efendants made written representations and promises to CCG that its interest in Uniserve's equipment was covered as the loss payee under the Policy." (*Id.*). CCG contends that Community should have reasonably expected that CCG would rely on the representation that it was covered as a loss payee (*Id.*, ¶ 45).

The statute of limitations for promissory estoppel claims is three years. *See* Ark. Code Ann. § 16–56–105 (Repl. 2005); *Crutchfield v. Tyson Foods, Inc.*, 514 S.W.3d 499, 502 (Ark. App. 2017). The statute of limitations begins to run when the cause of action accrues. For a breach of contract action, the cause of action accrues and the statute of limitations begins to run "when the plaintiff could have first maintained the action to a successful conclusion." *Dupree v. Twin City Bank,* 777 S.W.2d 856, 858 (Ark. 1989) (citation omitted); *Hunter v. Connelly,* 446 S.W.2d 654, 657 (Ark. 1969) (cause of action accrues moment right to commence an action comes into existence); *Oaklawn Bank v. Alford,* 845 S.W.2d 22, 23 (Ark. App. 1993) (cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and "occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached."). A cause of action for a tort claim accrues "the moment the right to commence an action comes into being, and the statute of limitations commences to run from that time." *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (Ark. 2106); *Chalmers v. Toyota Motor Sales, USA, Inc.,* 935 S.W.2d 258, 261 (Ark. 1996) ("The limitations period found in Ark. Code Ann. § 16-56-105(3) begins to run when there is a complete and present cause of action, and, in the absence of concealment of the wrong, when the injury occurs, not when it is discovered" (internal citation omitted)). Once it appears from the face of

the complaint that the action is barred by the applicable statute of limitations, the burden is on plaintiff to prove by a preponderance of the evidence that the limitations period is tolled. *Chalmers,* 935 S.W.2d at 261.

On December 31, 2009, Uniserve applied for an insurance policy through Community (Dkt. No. 54, ¶ 4). An additional interest schedule identifying CCG as a loss payee was attached to the application (*Id.*). On April 28, 2010, the Policy was issued. On May 20, 2010, Community issued an Evidence of Property Insurance form (*Id.*, ¶ 9). The form lists CCG as an additional interest holder as a loss payee (*Id.*, ¶ 10). The form states that "this evidence of property insurance is issued as a matter of information only and confers no rights upon the additional interest named below. The evidence of property insurance does not amend, extend, or alter the coverage." (Dkt. No. 1, at 93). On August 29, 2010, CDY316 was destroyed by fire. Community issued a property loss notice on August 30, 2010, with no mention of CCG as an interest holder. Swett forwarded the notice to AGCS. On December 9, 2010, Ms. Fox, claims adjustor for AGCS, emailed Mr. Michaels, attorney for Mr. Statler of Uniserve, asking for the name of Uniserve's loss payee under the Policy. Mr. Michaels responded to Ms. Fox, stating that there was no loss payee for CDY316. On December 9, 2010, Mr. Michaels forwarded a sworn statement in proof of loss signed by Mr. Statler of Uniserve to Ms. Fox at AGCS. The sworn statement represented that there were no additional interests as to CDY316. On December 13, 2010, AGCS issued a check for the loss to Uniserve.

The Court finds that CCG's claims for promissory estoppel accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve. This is the date upon on which a complete and present cause of action accrued as to CCG. CCG brought its

claim on August 27, 2015, nearly five years after its claim accrued. As such, CCG's claim for promissory estoppel is time barred.

However, CCG alleges that Community's alleged concealment of material facts amounts to fraudulent concealment, thus tolling the statute of limitations (Dkt. No. 53, at 12-13). Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Miles v. A.O. Smith Harvestore Prods, Inc*., 992 F.2d 813, 816 (8th Cir. 1993). In Arkansas, fraudulent concealment is often described as follows:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud he is presumed to have had reasonable knowledge of it.

*Wilson v. General Electric Capital Auto Lease, Inc.,* 841 S.W. 2d 619, 620-21 (Ark. 1992); *see also Shelton v. Fiser,* 8 S.W.3d 557, 562 (Ark. 2000).

CCG does not allege affirmative acts of fraud by Community. Rather, CCG alleges that Community committed fraudulent concealment by its alleged failure to speak. "[I]n some situations, the law imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge, and the failure to speak is the *equivalent of fraudulent concealment* and amounts to fraud just as much as an affirmative falsehood." *Floyd v. Koenig*, 274 S.W.3d 339, 342 (Ark. App. 2008) (citing *Camp v. First Fed. Savings & Loan*, 671 S.W.2d 213, 215 (Ark. App. 1984)).

This rule is limited to special circumstances, such as a confidential relationship. *Floyd,* 274 S.W.3d at 342; *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 134 (Ark. 1983); s*ee also Union Nat. Bank of Little Rock v. Farmers Bank*, 786 F.2d 881, 887 (8th Cir. 1996)

(quoting *Hanson Motor Co. v. Young*, 265 S.W.2d 501, 504 (Ark. 1954) ("The duty of disclosure also arises where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not.")).  Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak arises where one party knows another is relying on misinformation to his detriment.  *See Ward v. Worthen Bank & Trust Co., N.A.*, 681 S.W. 2d 365, 368 (Ark. 1984); *Berkeley Pump Co.,* 653 S.W.2d at 134 ("The general rule is to the contrary, and ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud [ ] must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information. . . . We find nothing in the abstract suggesting circumstances from which that rule of law might be found applicable.  If fraud exists, whether affirmatively or by concealment, it ought not to be difficult to isolate and cite it.").  To determine whether special circumstances exist, the Court looks to all the circumstances of the case and compares "the facts not disclosed with the object and end sought by the contracting parties . . . ."  *Camp*, 671 S.W.2d at 216.

While a fiduciary duty in the strict sense of the term is not required to find special circumstances, when one party is in a position to have and exercise control over another who reposes confidence in him, a confidential or similar relationship may exist to support a finding of fraudulent concealment.  *Camp*, 671 S.W. 2d at 216.  For example, in *Camp*, the appellant purchased a newly constructed home from a builder who had borrowed construction money from appellee bank.  *Id.*, at 215.  Unbeknownst to appellant, the house was in a flood plain.  *Id.*  There was testimony in the record that the appellant had recently moved to the area, signed the purchasing paperwork in the appellee bank's office, relied considerably on the appellee bank's representations

throughout the negotiation process, and that the appellee bank had a pecuniary interest in the outcome of the sale. *Id*., at 215-216. The court found this sufficient evidence to reverse the lower court's directed verdict on the issue of fraudulent concealment and held that a jury should have the opportunity to consider whether a confidential or similar relationship existed between appellant and the bank, thereby imposing a duty upon the bank to speak. *Id*., at 216. The facts here are different from those presented in *Camp*.

CCG has failed to carry its burden to show that special circumstances existed giving rise to a duty to speak on the part of Community. CCG contends that Community prepared the loss notice form and notified AGCS of the loss but failed to provide any information to CCG until four years later (Dkt. No. 53, at 14). CCG contends that "as Uniserve's broker and authorized representative under the Policy, Community was under a legal duty to exercise reasonable care and skill in handling the claim." (*Id*.). CCG contends that, as loss payee and intended beneficiary under the Policy, Community's duty also extended to CCG (*Id*.). CCG cites to *Williams-Berryman, Ins. Co. v. Morphis* for the proposition that an insurance agent must use reasonable skill and care in handling an insurance claim. 461 S.W. 2d 577, 580 (Ark. 1971). CCG then cites to a New Jersey state court case for the proposition that an insurance agent's duty can extend to foreseeable beneficiaries of an insurance policy, such as loss payees. *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc*., 638 A.2d 1288, 1298 (N.J. 1994). Both cases deal with financially insolvent insurers and the agent's duty to investigate solvency of potential insurers prior to issuing policies of insurance. Neither case pertains to tolling the statute of limitations based on a duty to speak tantamount to fraudulent concealment.

Based on the record evidence, even with all reasonable inferences drawn in favor of CCG, no reasonable juror could conclude that special circumstances or a confidential relationship existed

between CCG and Community. *See Floyd*, 274 S.W. 3d at 342-43 (finding facts alleged sufficient to support the application of fraudulent concealment where a patient's long-term primary care physician advised patient to give child up for adoption, arranged for the adoption, and then disclosed patient's medical records and personal information to adoptive parents). Without special circumstances or a confidential relationship, no duty arises. Based on the record evidence, even with all reasonable inferences drawn in favor of CCG, no reasonable juror could conclude that Community engaged in fraudulent concealment in handling the claim for CDY316.

Further, it does not appear from the record evidence that CCG exercised reasonable diligence in detecting the alleged fraud. *Wilson*, 841 S.W.2d at 620-21. From the record, it appears that CCG did not have a copy of the Policy as required by its security agreement with Uniserve from which to determine its coverage as a named loss payee (Dkt. Nos. 46, at 8; 63, ¶ 7).

For these reasons, the Court determines that the three year statute of limitations bars CCG's promissory estoppel claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of Community on CCG's promissory estoppel claim.

### E.    Conversion

CCG submits that, despite Community's assertion that it had no involvement in the handling of the claim, there are genuine issues of fact as to whether Community exercised control over the insurance proceeds and directed payment of the proceeds to Uniserve rather than to CCG. CCG contends that Community was the party who prepared the property loss notice and forwarded the notice to Swett in order to initiate the claim (Dkt. No. 53, at 7). CCG further contends that Community failed to identify CCG's interest on the notice despite being fully aware that CCG was entitled to the insurance proceeds (*Id*.).

CCG's claim for conversion is barred by the statute of limitations. Arkansas Code Annotated § 16-56-105(6) provides a three-year statute of limitations for "taking or injuring any goods or chattels." The Court finds that CCG's claim for conversion of the insurance proceeds for CDY316 accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve only. This is the date upon which a complete and present cause of action accrued as to CCG, and the date upon which CCG's right to commence an action came into being. *Chalmers*, 935 S.W. 2d at 261. CCG brought its claim on August 27, 2015, nearly five years after its claim accrued. As noted above, and based on the record before the Court, no reasonable juror could conclude that there was fraudulent concealment. The Court grants summary judgment in favor of Community on CCG's claim for conversion.

**F. Negligence**

CCG alleges that Community, as insurance agent, owed CCG a "duty to use reasonable care, skill, and judgment with a view to the security or indemnity for which the insurance was sought" (Dkt. No. 53, at 8). CCG contends that Community failed in its duty by not informing CCG of the damage to the CDY316, by failing to acknowledge CCG's interest as loss payee on the property loss notice, and by failing to inform CCG that claim proceeds had been paid directly to Uniserve (*Id*., at 9). CCG submits that whether Community breached its duty to CCG is a question of fact for the jury, and thus, summary judgment is not appropriate (*Id*., at 9-10). The Court finds that the applicable statute of limitations for claims of negligence is three years. As such, CCG's claim for negligence against Community is barred by the statute of limitations. *See* Ark. Code Ann. § 16-56-105; *Calgano v. Shelter Mut. Ins. Co*., 957 S.W. 2d 700, 701 (Ark. 1997).

In an action for negligence against an insurance agent, the three-year limitations period begins to run, absent concealment of the wrong, on the date that the negligent act was committed,

rather than on the date it was discovered. *See Calgano*, 957 S.W. 2d at 701; *Flemens v. Harris*, 915 S.W.2d 685, 688 (Ark. 1996). As the Court explained above, the general rule of fraudulent concealment requires "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *Shelton,* 8 S.W.3d at 562. Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment. *See Ward,* 681 S.W. 2d at 368; *Berkeley Pump Co.,* 653 S.W.2d at 134. This rule is applicable under "special circumstances . . . such as a confidential relationship." *Floyd,* 274 S.W.3d at 342 (citing *Berkeley Pump Co.,* 653 S.W.2d at 134).

CCG contends that the three-year statute of limitations should be tolled because Community purportedly concealed material facts by failing to speak (Dkt. No. 53, at 12-13). CCG submits that, "as Uniserve's broker and authorized representative under the Policy, Community was under a legal duty to exercise reasonable care and skill in handling the claim." (Dkt. No. 53, at 14). CCG contends that Community's duty also extended to CCG as a loss payee under the Policy and that "Community was required to notify CCG of the loss so that CCG could ensure that it received the proceeds it was entitled to." (*Id*.). CCG contends that Community prepared the Notice of Loss form and notified AGCS of the loss, but failed to communicate the loss to CCG (*Id*., at 14). CCG further submits that there was a substantial inequality of knowledge between CCG and Community (*Id*.).

Based on the record evidence, construing all reasonable inferences in favor of CCG, no reasonable juror could make a finding of fraudulent concealment. Community was the local insurance agent used by Mr. Statler of Uniserve to obtain the Policy of insurance. CCG contends

that Community owed CCG a duty because Community submitted the initial application for insurance on behalf of Uniserve to AGCS and because Community issued an Evidence of Property Insurance form listing CCG as a loss payee. It is unclear what, if any, contact Community had with CCG directly. While Community issued an Evidence of Property Insurance form, it is unclear to the Court if that form was issued to Uniserve or directly to CCG. The record does not support the conclusion that a confidential relationship existed between CCG and Community. *See Floyd*, 274 S.W. 3d at 342-43

Based on the record evidence, the Court determines that no reasonable juror could conclude that such a relationship existed or that fraudulent concealment on the part of Community occurred. Therefore, the Court determines that the three year statute of limitations bars CCG's negligence claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of Community on CCG's negligence claim.

## IV. Cross-Claims

Also before the Court is Community's motion for summary judgment as to AGCS and Swett's cross-claims for contribution (Dkt. No. 77). On June 9, 2016, Community filed a cross-claim for contribution against AGCS and Swett (Dkt. No. 32). AGCS and Swett in turn filed cross-claims for contribution against Community (Dkt. Nos. 43; 44). Because the Court grants summary judgment to AGCS, Community, and Swett as to all of CCG's claims against them, the Court denies as moot Community's motion for summary judgment (Dkt. No. 77).

## V. Conclusion

The Court grants summary judgment to defendant Community as to CCG's claims (Dkt. No. 45). The Court dismisses with prejudice all claims against Community. The Court denies as moot Community's motion for summary judgment as to AGCS and Swett's cross-claims for

contribution (Dkt. No. 77).  The Court denies as moot CCG's motion for enlargement of discovery deadline (Dkt. No. 81).

So ordered this 30th day of March, 2018.

Kristine G. Baker
United States District Court Judge