IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**COMMERCIAL CREDIT GROUP INC.**                                    **PLAINTIFF**

v.                                  Case No. 1:15-cv-00093 KGB

**ALLIANZ GLOBAL CORPORATE & SPECIALTY
NORTH AMERICA a/k/a AGCS MARINE INSURANCE
COMPANY; BATESVILLE INSURANCE AGENCY, INC. d/b/a
COMMUNITY INSURANCE PROFESSIONALS, INC.;
and SWETT & CRAWFORD**                                              **DEFENDANTS**

**OPINION AND ORDER**

Before the Court is defendant Allianz Global Corporate & Specialty North America a/k/a AGCS Marine Insurance Company's ("AGCS") motion for summary judgment (Dkt. No. 58). Plaintiff Commercial Credit Group, Inc. ("CCG"), has responded to the motion (Dkt. No. 68), and AGCS has replied (Dkt. No. 75). For the following reasons, the Court grants AGCS's motion for summary judgment and enters judgment in favor of AGCS on CCG's claims.

**I.    Factual Background**

Unless otherwise noted, the following facts are taken from AGCS's material facts as to which there is no genuine dispute to be tried and CCG's statement of material facts as to which a genuine dispute exists to be tried (Dkt. Nos. 60, 70).

Uniserve, LLC ("Uniserve"), a scrap metal dealer located in Newport, Arkansas, maintained various pieces of large construction equipment as part of its job activities (Dkt. No. 60, ¶ 1). The sole partner and managing member of Uniserve was Kevin Statler (*Id*., ¶ 2). Uniserve maintained a property interest in a 2004 Caterpillar Material Handler, Serial Number CDY00316 ("CDY316") (*Id*., ¶ 3). CCG maintained a perfected security interest in CDY316 (Dkt. Nos. 60, ¶ 4; 70, ¶ 1). On October 27, 2009, Mr. Statler, on behalf of Uniserve, signed a security agreement

related to the financing of CDY316 and other pieces of equipment, including a 2004 Caterpillar Material Handler with serial number CDY00308 ("CDY308") (Dkt. Nos. 60, ¶ 5; 70, ¶ 3).

The security agreement between CCG and Uniserve required Uniserve to obtain insurance on CCG's collateral and additionally required that the insurance policy contain a standard or union mortgage clause designating CCG as an additional insured or lender loss payee (Dkt. No. 70, ¶ 2). The security agreement further required Uniserve to provide CCG with a copy of the insurance policy naming CCG as an additional insured (Dkt. No. 60, ¶ 6). AGCS contends that Uniserve never provided CCG with a copy of an all risks insurance policy naming CCG as an additional insured (*Id.*, ¶ 7).

In order to obtain the insurance policy, defendant Batesville Insurance Agency, Inc. d/b/a Community Insurance Professionals, Inc. ("Community"), used the wholesale insurance brokering services of Swett & Crawford ("Swett") (*Id.*, ¶ 8). Community is a retail insurance broker/agent, and Swett is a wholesale insurance broker (*Id.*, ¶¶ 9, 10). As a wholesale insurance broker, Swett worked as a middleman between the retail agent and potential insurers to provide Uniserve with an insurance policy fitting its needs (*Id.*, ¶ 11). In its capacity as a wholesale insurance broker, Swett arranged for the issuance by AGCS of AGCS Policy #MXI93017792 ("Policy"), naming Uniserve and its various entities as the insured (*Id.*, ¶ 14). The Policy term was April 28, 2010, through April 28, 2011 (Dkt. No. 60, ¶ 18). The Policy covered both CDY316 and CDY308 (Dkt. No. 70, ¶ 7). CDY316 was covered by $474,409.00 in insurance, and CDY308 was covered by $441,946.00 in insurance (*Id.*, ¶¶ 12, 13). The application for the insurance Policy included an additional interest schedule which identified CCG as loss payee on the policy (*Id.*, ¶ 5).

The Policy contains a loss payee provision that states AGCS will pay both the insured and a loss payee, "[i]f a loss payee is named in the Declarations." (*Id.*, ¶ 17). The Policy did not list CCG as a loss payee (*Id.*, ¶ 19). On April 29, 2010, Swett issued a confirmation of coverage

bound, noting the blanket loss payee endorsement on the Policy (Dkt. No. 70, ¶ 8). AGCS contends that, at no time during the process of obtaining a policy of insurance for Uniserve, did any representative of Swett communicate with Kevin Statler, any other representative of Uniserve, or any representative of CCG. (Dkt. No. 60, ¶¶ 12, 13). AGCS submits that neither Community nor Uniserve ever provided any information to AGCS or Swett which indicated that CCG was to be a loss payee on the Policy (*Id.*, ¶¶ 15, 16).

Community provided Uniserve with an Evidence of Property Insurance form which states that the "policies of insurance listed below have been issued to the insured name above [Uniserve] for the policy period indicated [04/20/2010-04/28/2011]." (Dkt. No. 70, ¶ 9). The Evidence of Property Insurance form lists CCG as an additional interest and the box for loss payee is marked (Dkt. No. 1, Ex. 2). CCG submits that the Evidence of Property Insurance form provided confirmation that Uniserve obtained insurance covering both CDY316 and CDY308 and naming CCG as loss payee (Dkt. No. 70, ¶¶ 10, 11). CCG further submits that Endorsement 001 included in the Policy notes that loss payees were added under the Policy (*Id.*, ¶ 14). CCG submits that it was the sole loss payee under the Policy during the initial term (*Id.*, ¶ 15).

On August 29, 2010, during the Policy term, CDY316 was completely destroyed by fire (Dkt. No. 60, ¶ 20). Community prepared a property loss notice and provided notice of the loss to Swett on August 30, 2010 (Dkt. No. 60, ¶ 21; Dkt. No. 70, ¶¶ 16, 26). Swett then forwarded the notice of loss to AGCS (Dkt. No. 60, ¶ 22). AGCS contends that Swett played no role in the handling of the claim (*Id.*).

On November 5, 2010, Claire Fox, claims professional for AGCS, emailed Christian Michaels, attorney for Mr. Statler of Uniserve, inquiring about the name of Uniserve's loss payee for CDY316 (*Id.*, ¶ 23). On December 9, 2010, Mr. Michaels responded to Ms. Fox and stated that CDY316 did not have a loss payee (*Id.*, ¶ 24). Also on December 9, 2010, Mr. Michaels

3

forwarded to Ms. Fox a sworn statement in proof of loss which was signed by Mr. Statler (*Id.*, ¶ 25). One of the representations contained within the sworn statement was: "No other person or persons had any interest therein [as to material handler 316] or encumbrance thereon, except:" The response given to this question was "n/a." (*Id.*). On December 13, 2010, AGCS issued check #000010:651 in the amount of $212,365.45 to Mr. Statler and to "Uniserve, LLC, UIMG, et al." (Dkt. No. 60, ¶ 26). The proceeds were not made jointly payable to CCG (Dkt. No. 70, ¶ 23). CCG submits that Cari Ellenberger, a Legal Specialist for AGCS, later questioned the payment to the insured rather than the loss payee, asking: "Did we have the Acord? It seems to me we should have known?" (*Id.*, ¶ 24).

On February 16, 2011, CDY308 was destroyed in a fire (*Id.*, ¶ 25). Community prepared a property loss notice and provided notice of the loss to Swett (*Id.*, ¶ 26). AGCS issued payment in the amount of $431,946.00 on July 18, 2011 (*Id.*, ¶ 29). The payment was made to both Uniserve and CCG (*Id.*). CCG received insurance proceeds for the loss of CDY308 but did not receive insurance proceeds for the loss of CDY316 even though both machines were covered by the initial Policy (Dkt. No. 70, ¶ 30). CCG contends that it knew generally that Mr. Statler had experienced a fire on another piece of equipment and received insurance proceeds, but CCG submits that it did not know that the loss was related to its collateral (*Id.*, ¶ 31). CCG contends that it did not know that its loans to Uniserve were no longer secured by the CDY316 and continued to extend financing to Uniserve based on the value of the collateral (*Id.*, ¶ 33).

**II.     Standard Of Review**

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a

4

reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III. Discussion

CCG's complaint alleges the following causes of action: (1) breach of contract; (2) specific performance; (3) promissory estoppel; (4) conversion; and (5) negligence. AGCS argues that the Court should grant summary judgment in its favor because: (1) the gist of CCG's claims lie in tort and thus the applicable statute of limitations bars CCG's claims, and (2) CCG did not provide notice to AGCS of its claim to policy proceeds in accordance with Arkansas law and precedent. Specifically, AGCS contends that under Arkansas's "gist test," CCG's claims sound entirely in tort. AGCS contends that CCG's complaint is actually a tort action against AGCS for not conducting a sufficiently diligent investigation into the identity of the loss payee for CDY316. AGCS argues, therefore, that the applicable three year statute of limitations bars all of CCG's claims. In response, CCG maintains that, because its claims arise under a policy of insurance, Arkansas Code Annotated § 23-79-202 with its corresponding five-year limitations period governs all of its claims.

The Court examines first the "jist" of CCG's claims against AGCS. The Court concludes the jist is a breach of contract claim but that CCG cannot prevail on that claim against AGCS. Next, the Court examines whether Arkansas Code Annotated § 23-79-202 applies to all claims alleged by CCG against AGCS. The Court concludes that provision does not cover CCG's claims. Therefore, in determining whether AGCS is entitled to summary judgment on CCG's remaining claims, the Court looks to each cause of action alleged by CCG in turn. Finally, the Court considers whether CCG was required to provide notice to AGCS under Arkansas law.

    **A.    CCG's Claims**

        **1.    Breach Of Contract Claim**

"To determine the cause of action, we look to the facts alleged in the complaint to ascertain the area of law in which they sound." *Farris v. Conger*, 512 S.W.3d 631, 634 (Ark. 2017) (quoting *Sturgis v. Skokos*, 977 S.W.2d 217, 220 (Ark. 1998)). The Court then looks to the "gist" of the action to determine which statute of limitations applies. *Farris*, 512 S.W.3d at 634 (citing *McQuay v. Guntharp*, 963 S.W.2d 583, 585 (Ark. 1998)). In order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between plaintiff and defendant, the obligation of defendant thereunder, a violation by defendant, and damages resulting to plaintiff from the breach. *Rabalaias v. Barnett*, 683 S.W.2d 919, 921 (Ark. 1985) (citation omitted). For a contract statute of limitations to apply, there must be a breach of a specific promise. *See Farris*, 512 S.W.3d at 634 ("When the complaint contains a claim for breach of contract, the question is whether there is a specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement."); *Sturgis*, 977 S.W.2d at 220.

In its complaint, CCG contends that AGCS breached the insurance Policy by not giving CCG notice of the claim on CDY316, by failing to pay the amounts due to CCG under the Policy,

6

and for failing to supervise properly its agents and brokers (Dkt. No. 1, ¶ 34). CCG submits that it was a party to the contract as the sole loss payee under the Policy and that defendants had an obligation to pay the claim amount to CCG as reimbursement for the loss of its collateral (Dkt. No. 1, ¶¶ 17, 35). CCG further submits that it performed all of its obligations under the terms of the Policy and sustained damages in the amount of $212,365.45 plus interest, attorneys' fees, costs, and expenses (*Id.*, ¶ 36).

When an insurance policy expresses an intent to cover a person's property or make that person a loss payee under the terms of the policy, that person is considered as a co-insured or a third-party beneficiary. *See Newcourt Financial, Inc. v. Canal Ins. Co.*, 15 S.W.3d 328, 333 (Ark. 2000) (describing a loss payee as a beneficiary of a policy when loss payee was specifically named in the policy). As such, an intended third-party beneficiary to a policy of insurance may recover for damages from breach of contract. *Stilley v. James,* 60 S.W.3d 410, 414 (Ark. 2001). Such a contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party. *Little Rock Wastewater Util. v. Larry Moyer Trucking,* 902 S.W.2d 760, 763 (Ark. 1995). "[T]here is a presumption that parties contract only for the benefit of themselves, and a contract will not be considered as having been made for the use and benefit of a third party unless it clearly appears that such was the intention of the parties." *Fireman's Fund Insurance Co. v. Rogers*, 712 S.W.2d 311, 313 (Ark. App. 1986).

The Policy includes a number of incorporated documents detailing the extent of coverage provided by AGCS. Those documents are listed on the Policy's declarations page as "coverage forms and corresponding endorsements attached at inception" (Dkt. No. 1, Ex. 1, at 19). Within those documents, there are mortgage or loss payee provisions found in documents entitled Commercial Inland Marine Conditions, Commercial Output Program Property Coverage Part— Mortgage Provisions, and Endorsement 001.

7

Section I of Commercial Inland Marine Conditions is a loss payee provision (Dkt. No. 1, Ex. 1, at 69). It provides: "If a loss payee is named in the Declarations, we will pay you and the loss payee, as the interest of each may appear" (*Id.*). Commercial Output Program Property Coverage Part—Mortgage Provisions provides that, "[i]f a mortgagee (mortgage holder) is named in this policy, loss to building property will be paid to the mortgagee and 'you' as their interest appears." (Dkt. No. 1, Ex. 1, at 55). Endorsement 001, subtitled "Broad Form Named Insured/Blanket Loss Payee," lists the Uniserve entities as the insured, Swett as the producer, the Policy number, and the effective date of the Policy. Under the heading "Blanket Loss Payee," the form provides as follows: "It is understood and agreed as respects to Contractor's Equipment, Additional Insureds, Loss Payees and/or Lender's Loss Payees are added for covered property as their interest(s) may appear under a written agreement with you prior to any loss" (Dkt. No. 1, Ex. 1, at 81).

Based upon the record evidence, CCG is not named in the declarations, in Endorsement 001, or anywhere else in the Policy. Based upon the wording of the insurance Policy between AGCS and Uniserve, the loss payee provisions are applicable only "[i]f a loss payee is named in the declarations . . ." or "[i]f a mortgagee (or mortgage holder) is named in this policy" (Dkt. No. 1, Ex. 1, at 69, 55). By its terms, the Policy precludes the application of the loss payee provision to CCG because CCG is not named in the Policy. *See Hatley v. Payne*, 751 S.W.2d 20, 22 (Ark. App. 1988); *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. Guyer*, 386 S.W.3d 682, 689 (Ark. App. 2011) (relying on the plain terms of the insurance policy and determining that loss payees not named in the policy were not to be considered by the insurance company when issuing payment for insurance proceeds).

In addition to the loss payee provisions in the Policy, CCG points to the following to establish its status as loss payee under the Policy: (1) the Evidence of Property Insurance form

8

issued by Community; (2) the security agreement between Uniserve and CCG; (3) various Policy change requests submitted to AGCS as to other insured pieces of equipment owned by Uniserve naming CCG as the loss payee; (4) the initial application for insurance sent to AGCS; (5) UCC filing statements filed by CCG; and (6) AGCS' issuance of proceeds to both Uniserve and CCG for the loss of CDY308.

The Court finds CCG's arguments unavailing as to the Evidence of Property Insurance form, the security agreement, the Policy change requests, the initial application for insurance, and the UCC filing statements. None of these documents are part of the insurance Policy at issue. None of these documents are incorporated in the Policy declaration pages nor referenced elsewhere in the Policy. While the Evidence of Property Insurance form does name CCG as an additional interest, AGCS argues that the Evidence of Property Insurance form is a standard form provided by the Association for Cooperative Operations Research and Development ("ACORD") to compile statistical data (Dkt. No. 59, at 14). It is undisputed that the form states that it is solely used as a matter of information only and does not confer any rights on any entity (Dkt. No. 1, Ex. 2). The Evidence of Property Insurance form is not part of the Policy. Similarly, while CCG may appear in the application for insurance and as a party to the security agreement, those are not the contracts that form the basis of CCG's breach of contract claim according to the specific allegations in CCG's complaint. Nor do the UCC filings by CCG listing CCG's interest in Uniserve's collateral suffice to form the basis of CCG's breach of contract claim.

Equally unavailing is CCG's claim that payment to CCG as loss payee for the loss of CDY308 establishes its status as loss payee as to CDY316. CCG contends that, because both pieces of machinery were covered on the same Policy and were destroyed about six months apart, AGCS should have known about CCG's status as loss payee as to CDY316. CDY308 was destroyed by fire on or about February 10, 2011. AGCS submits that, after that fire, CCG itself

9

contacted AGCS and informed AGCS that CCG was a loss payee on CDY308 (Dkt. No. 75, at 8-9). James Byrne of AGCS then contacted Graham Catlett, attorney for Uniserve, to confirm CCG's claim as loss payee (*Id.*). Mr. Catlett replied affirmatively on June 29, 2011, and the proceeds were issued both to Uniserve and CCG (*Id.*, at 9). The Court determines that, while CCG's complaint alleges breach of a specific promise sufficient to state a cause of action for breach of contract, the Policy does not express a clear intention to benefit CCG. From the record evidence, construing all reasonable inferences in favor of CCG, no reasonable juror could conclude otherwise. As such, the Court finds that CCG is not a co-insured or intended third-party beneficiary to the insurance Policy and, thus, cannot maintain an action for breach of that Policy. AGCS is entitled to summary judgment in its favor on CCG's breach of contract claim.

### 2. Applicability Of Arkansas Code Annotated § 23-79-202

Regardless of the type of claim, CCG argues that its claims are not time-barred because it contends that all of its claims are governed by the five-year limitations period referenced in Arkansas Code Annotated § 23-79-202 (Dkt. No. 69, at 5). CCG submits that, because its claims arise under a policy of insurance, § 23-79-202 applies (*Id.*, at 8). Section 23-79-202 provides:

> (a) An action may be maintained in the courts of this state by an insured or any other person on his or her behalf to recover on any claim or loss arising under a policy of insurance on property or life against the insurer issuing the policy or against the sureties on any bond filed by the insurer as a condition precedent to its right to do business in this state, at any time within the period prescribed by law for bringing actions on promises in writing.
>
> (b) Any stipulation or provision in the policy or contract requiring the action to be brought within any shorter time or be barred is void.

Ark. Code Ann. § 23-79-202.

CCG cites the Court to an Eighth Circuit Court of Appeals case and Arkansas Supreme Court case applying the statute to claims by an insured against an insurance company: *Graham v. Hartford Life and Accident Insurance Co.*, 677 F.3d 801 (8th Cir. 2012), and *Shelter Mutual*

10

*Insurance Co. v. Nash*, 184 S.W.3d 425 (Ark. 2004). In *Graham*, the plaintiff insured brought a claim for breach of contract against his insurance company. *Graham*, 677 F.3d at 803. *Graham* concerned a provision in the insurance policy that reduced the limitations period to less than five years, and the court found that the parties could not, under those facts, contract around the statutory period. The *Graham* court did not address application of Arkansas Code Annotated § 23-79-202 to claims of negligence or other tort claims.

Similarly, in *Nash*, a plaintiff seeking underinsured motorist benefits and money damages brought an action for declaratory judgment regarding the extent of his automobile insurance coverage. *Nash*, 184 S.W.3d at 426. The plaintiff in *Nash* did not bring claims for negligence or other torts. The *Nash* court applied Arkansas Code Annotated § 23-79-202 and the five-year statute of limitations based on the existence of the policy.

The Court finds no support for CCG's contention that Arkansas Code Annotated § 23-79-202 governs an insured's claims for negligence, conversion, and promissory estoppel. CCG points to no authority supporting that position. The Court finds no authority applying the statue to tort claims. The cases applying § 23-79-202 in general involve claims for breach of an insurance contract. *See Graham*, 677 F.3d at 803; *Nash*, 184 S.W.3d at 426; *see also Simmons Foods, Inc., v. Indus. Risk. Insurers,* 863 F.3d 792, 796-97 (8th Cir. 2017) (applying § 23-79-202 to claim by insured for breach of contract). As such, the Court declines to apply § 23-79-202 to CCG's tort claims and will apply the applicable statute of limitations governing claims for promissory estoppel, conversion, and negligence as outlined below.

### 3. Specific Performance

CCG submits that it is entitled to specific performance under the terms of the Policy (Dkt. No. 1, ¶ 41). Specific performance is an equitable remedy which compels performance of a contract on the precise terms agreed upon by the parties. *Dossey v. Hanover, Inc.,* 891 S.W.2d 67,

69 (Ark. App. 1995). The Court finds that CCG is unable to recover in specific performance as it is not a co-insured or an intended third party beneficiary to the contract at issue, for the reasons the Court explained above. The Court grants AGCS's motion for summary judgment as to CCG's claim for specific performance.

### 4. Promissory Estoppel

CCG contends that it relied to its detriment on representations and promises made by the defendants that its interest in Uniserve's equipment was covered by the Policy (Dkt. No. 1, ¶¶ 43, 46). CCG seeks reliance damages in the amount of the claim proceeds plus interest, attorneys' fees, costs, and expenses (*Id.*). Promissory estoppel applies when: (1) defendant made a promise; (2) defendant should have reasonably expected plaintiff to act or refrain from acting in reliance on the promise; (3) plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice would result from refusal to enforce the promise. *Fairpark, LLC v. Healthcare Essentials, Inc.*, 381 S.W.3d 852, 859 (Ark. App. 2011); Arkansas Model Jury Instructions—Civil 2444 (2016). Promissory estoppel only applies when the elements of a contract cannot be shown. *Skallerup v. City of Hot Springs*, 309 S.W.3d 196, 201 (Ark. 2009); *see also Mickens v. Correctional Medical Services, Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) (noting that under Arkansas law, "promissory estoppel is an alternative theory which is not available when an actual contract exists.").

The statute of limitations for promissory estoppel claims is three years. *See* Ark. Code Ann. § 16–56–105 (Repl. 2005); *Crutchfield v. Tyson Foods, Inc.*, 514 S.W.3d 499, 502 (Ark. App. 2017). The statute of limitations begins to run when the cause of action accrues. For a breach of contract action, the cause of action accrues and the statute of limitations begins to run "when the plaintiff could have first maintained the action to a successful conclusion." *Dupree v. Twin City Bank,* 777 S.W.2d 856, 858 (Ark. 1989) (citation omitted); *Hunter v. Connelly,* 446 S.W.2d

654, 657 (Ark. 1969) (cause of action accrues moment right to commence an action comes into existence); *Oaklawn Bank v. Alford,* 845 S.W.2d 22, 24 (Ark. App. 1993) (cause of action for breach of contract accrues moment right to commence an action comes into existence, and "occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached."). A cause of action for a tort claim accrues "the moment the right to commence an action comes into being, and the statute of limitations commences to run from that time." *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (Ark. 2006); *Chalmers v. Toyota Motor Sales, USA, Inc.,* 935 S.W.2d 258, 261 (Ark. 1996) ("The limitations period found in Ark. Code Ann. § 16-56-105(3) begins to run when there is a complete and present cause of action, and, in the absence of concealment of the wrong, when the injury occurs, not when it is discovered" (internal citation omitted)). Once it appears from the face of the complaint that the action is barred by the applicable statute of limitations, the burden is on plaintiff to prove by a preponderance of the evidence that the limitations period is tolled. *Chalmers,* 935 S.W.2d at 261.

AGCS issued the Policy on April 28, 2010. The Policy term ran from April 28, 2010, through April 28, 2011. On May 20, 2010, Community issued an Evidence of Property Insurance form listing CCG as a loss payee (Dkt. No. 70, ¶ 9). On August 29, 2010, CDY316 was destroyed by fire. Community issued a property loss notice on August 30, 2010, and Swett forwarded the notice to AGCS. On December 9, 2010, Ms. Fox, claims professional for AGCS, emailed Mr. Michaels, attorney for Mr. Statler of Uniserve, asking for the name of Uniserve's loss payee under the Policy. Mr. Michaels responded to Ms. Fox, stating that there was no loss payee for CDY316. On December 9, 2010, Mr. Michaels forwarded a sworn statement in proof of loss signed by Mr. Statler of Uniserve to Ms. Fox at AGCS. The sworn statement represented that there were no

13

additional interests as to CDY316. On December 13, 2010, AGCS issued a check for the loss to Uniserve.

The Court finds that CCG's claims accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve. This is the date upon on which a complete and present cause of action accrued as to CCG, and the date upon which CCG's right to commence an action came into being. CCG brought its claim on August 27, 2015, nearly five years after its claim accrued. As such, CCG's claim for promissory estoppel is time barred.

However, CCG submits that AGCS's failure to speak amounts to fraudulent concealment, thus tolling the statute of limitations (Dkt. No. 69, at 10-11). Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Miles v. A.O. Smith Harvestore Prods, Inc*., 992 F.2d 813, 816 (8th Cir. 1993). In Arkansas, fraudulent concealment is often described as follows:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud he is presumed to have had reasonable knowledge of it.

*Wilson v. General Electric Capital Auto Lease, Inc.,* 841 S.W. 2d 619, 620-21 (Ark. 1992); *see also Shelton v. Fiser,* 8 S.W.3d 557, 562 (Ark. 2000).

CCG does not allege affirmative acts of fraud on the part of AGCS. Rather, CCG alleges that AGCS committed fraudulent concealment by its alleged failure to speak. "[I]n some situations, the law imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge, and the failure to speak is the *equivalent of fraudulent concealment* and amounts to fraud just as much as an affirmative falsehood." *Floyd v. Koenig*, 274 S.W.3d 339, 342 (Ark. App. 2008) (citing *Camp v. First Fed. Savings & Loan*, 671 S.W.2d

14

213, 215 (Ark. App. 1984)). This rule is limited to special circumstances, such as a confidential relationship. *Floyd,* 274 S.W.3d at 342; *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 134 (Ark. 1983); s*ee also Union Nat. Bank of Little Rock v. Farmers Bank*, 786 F.2d 881, 887 (8th Cir. 1996) (quoting *Hanson Motor Co. v. Young*, 265 S.W.2d 501, 504 (Ark. 1954) ("The duty of disclosure also arises where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not.")). Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment. *See Ward v. Worthen Bank & Trust Co., N.A.*, 681 S.W. 2d 365, 368 (Ark. 1984); *Berkeley Pump Co.,* 653 S.W.2d at 134 ("The general rule is to the contrary, and ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud [ ] must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information. . . . We find nothing in the abstract suggesting circumstances from which that rule of law might be found applicable. If fraud exists, whether affirmatively or by concealment, it ought not to be difficult to isolate and cite it."). . To determine whether special circumstances exist, the Court looks to all the circumstances of the case and compares "the facts not disclosed with the object and end sought by the contracting parties . . ." *Camp*, 671 S.W.2d at 216.

While a fiduciary duty in the strict sense of the term is not required to find special circumstances, when one party is in a position to have and exercise control over another who reposes confidence in him, a confidential or similar relationship may exist to support a finding of fraudulent concealment. *Camp*, 671 S.W. 2d at 216. In *Camp*, the appellant purchased a newly constructed home from a builder who had borrowed construction money from appellee bank (*Id*., at 215). Unbeknownst to appellant, the house was in a flood plain (*Id*.). There was testimony in

15

the record that the appellant had recently moved to the area, signed the purchasing paperwork in the appellee bank's office, relied considerably on the appellee bank's representations throughout the negotiation process, and that the appellee bank had a pecuniary interest in the outcome of the sale (*Id.*, at 215-216). The court found this sufficient evidence to reverse the lower court's directed verdict on the issue of fraudulent concealment and held that a jury should have had the opportunity to consider whether a confidential or similar relationship existed between appellant and the bank, thereby imposing a duty upon the bank to speak (*Id.*, at 216). The facts of *Camp* are different from the facts here.

CCG has failed to carry its burden to show that special circumstances existed giving rise to a duty to speak on the part of AGCS. CCG contends that the AGCS "understood and agreed that additional loss payees and/or lender's loss payees were to be added for covered property as their interest may appear under a written agreement with Uniserve prior to any loss" and points to the security agreement between CCG and Uniserve (Dkt. No. 69, at 12). CCG further points to the application for insurance and CCG's publically recorded UCC financing statements as evidence that AGCS was aware that CCG may have been entitled to the insurance proceeds but failed to notify CCG of the claim (*Id.*). However, the record indicates that, on November 5, 2010, AGCS's claims adjuster, Ms. Fox, emailed Mr. Michaels, counsel for Mr. Statler of Uniserve, inquiring about the name of Uniserve's loss payee for CDY316 (Dkt. No. 60, ¶ 23). On December 9, 2010, Mr. Michaels responded to Ms. Fox and stated that CDY316 did not have a loss payee (*Id.*, ¶ 24). Mr. Michaels then forwarded to Ms. Fox a sworn statement in proof of loss signed by Mr. Statler stating that no other person had any interest in CDY316 (*Id.*, ¶ 25). Nothing in the record demonstrates fraudulent concealment on the part of AGCS in handling the claim for CDY316. The record does not support the conclusion that special circumstances or a confidential relationship existed between the parties. *See Floyd*, 274 S.W. 3d at 342-43 (finding facts alleged

sufficient to support the application of fraudulent concealment where a patient's long-term primary care physician advised patient to give child up for adoption, arranged for the adoption, and then disclosed patient's medical records and personal information to adoptive parents).

Based on the record evidence before the Court, even construing all reasonable inferences in favor of CCG, no reasonable juror could conclude that there was fraudulent concealment on the part of AGCS. Therefore, the Court determines that the three year statute of limitations bars CCG's promissory estoppel claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of AGCS on CCG's promissory estoppel claim.

### 5. Conversion

CCG contends that, as loss payee under the Policy, it was entitled to the proceeds from CDY316 in the amount of $212,365.45 and that AGCS's issuance of the funds solely to Uniserve amounts to conversion. Arkansas Code Annotated § 16-56-105(6) provides a three-year statute of limitations for "taking or injuring any goods or chattels." The Court finds that CCG's claim for conversion accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve only. This is the date upon on which a complete and present cause of action accrued as to CCG. *Chalmers*, 935 S.W. 2d at 261. CCG brought its claim on August 27, 2015, nearly five years after its claim accrued. As explained above, and based on the record evidence before the Court, no reasonable juror could conclude that there was fraudulent concealment. Therefore, the Court determines that the three year statute of limitations bars CCG's conversion claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of AGCS on CCG's conversion claim.

### 6. Negligence

CCG contends that the defendants' negligence caused CCG's status as loss payee to go undiscovered or ignored, thus resulting in damages. In Arkansas, the statute of limitations for

17

negligence actions is three years. Ark. Code Ann. § 16-56-105; *Tony Smith Trucking v. Woods & Woods, Ltd.,* 55 S.W.3d 327, 330 (Ark. App. 2001); *Gibson v. Herring*, 975 S.W.2d 860, 862 (Ark. App. 1998). The Court finds that CCG's claims accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve only. This is the date upon on which a complete and present cause of action accrued as to CCG. CCG brought its claim on August 27, 2015, nearly five years after its claim accrued. As noted above, the Court finds that the statute of limitations was not tolled by fraudulent concealment. As such, CCG's claim for negligence against AGCS is barred by the statute of limitations. The Court grants summary judgment in favor of AGCS on CCG's claim for negligence.

### B. Notice Under Arkansas Code Annotated § 23-79-125

AGCS submits that summary judgment should be granted to AGCS because CCG did not provide notice of its claim to the Policy proceeds in accordance with Arkansas law and precedent. Specifically, AGCS contends that CCG violated Arkansas Code Annotated §23-79-125(b) when it did not provide written notice to AGCS of its demand for payment pursuant to Uniserve's Policy. Section 23-79-125 provides "statutory protection" to insurers from any further liability upon payment of policy benefits unless the insurer received written notice before the payment of benefits that someone else may be a proper beneficiary. *See Wilson v. Hartford Ins. Co.,* No. 4:08CV04114, 2009 WL 3111884, at *4 (E.D. Ark. Sept. 24, 2009); *USAble Life v. Fow,* 820 S.W.2d 453, 455 (Ark. 1991). CCG argues that the statute is inapplicable to this case because the plain language of the statute establishes that it only applies to "life and health" or "accident and health" policies, not property insurance policies (Dtk. No. 69, at 13).

The statute provides:

(a) Whenever the proceeds of or payments under a life or accident and health insurance policy or annuity contract become payable in accordance with the terms of the policy or contract, or the exercise of any right or privilege thereunder, and the insurer makes payment of the amount in accordance with

> the terms of the policy or contract or in accordance with any written assignment thereof, the person then designated in the policy or contract or by the assignment as being entitled to the benefits shall be entitled to receive the proceeds or payments and to give full acquittance therefor.
>
> (b) The payments shall fully discharge the insurer from all claims under the policy or contract unless, before payment is made, the insurer has received at its home office written notice by or on behalf of some other person that the other person claims to be entitled to the payment or some interest in the policy or contract.

Ark. Code Ann. § 23-79-125.

Arkansas Code Annotated §23-79-125(b) is generally applied to third party beneficiary claims to life insurance proceeds. However, the Arkansas Supreme Court has examined the statute in the context of claims to property loss insurance proceeds. *See Guyer*, 386 S.W.3d at 690. AGCS urges this Court to apply Arkansas Code Annotated § 23-79-125 to the facts of this case and grant summary judgment on the basis that no written notice of the demand for payment was made by CCG before payment was made.

The Court declines to reach the issue of whether Arkansas Code Annotated § 23-79-125 applies to the facts of this case, and the Court need not do so to grant summary judgment in favor of AGCS. If the Court were to reach the issue, the Court notes that CCG alleges it is a loss payee. CCG alleges that the security agreement between it and Uniserve required Uniserve to obtain an insurance policy containing a standard or union mortgage clause naming CCG as loss payee. A standard or union mortgage clause serves as a separate contract between the mortgagee and the insurer, as if the mortgagee had independently applied for insurance. *Farmers Home Mutual Insurance Co. v. Bank of Pocahontas*, 129 S.W.3d 832, 835 (Ark. 2003); *Dalrymple v. Royal-Globe Insurance Co.*, 649 S.W.2d 939 (Ark. 1983). Had CCG been named as a loss payee under the policy, under Arkansas law, CCG may have been able to enforce its rights to the proceeds without being required to send written notice pursuant to § 23-79-125(b) claiming entitlement to the Policy proceeds. Because the Court grants summary judgment to AGCS based on the statute

of limitations, the Court declines to reach this issue of application of § 23-79-125 to the facts of this case.

IV. **Conclusion**

The Court grants summary judgment to defendant AGCS as to CCG's claims for breach of contract, specific performance, promissory estoppel, conversion, and negligence (Dkt. No. 58). CCG's claims against AGCS are hereby dismissed with prejudice.

So ordered this 30th day of March, 2018.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge

.