IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**COMMERCIAL CREDIT GROUP INC.**                                         **PLAINTIFF**

v.                                           **Case No. 1:15-cv-00093 KGB**

**ALLIANZ GLOBAL CORPORATE & SPECIALTY
NORTH AMERICA a/k/a AGCS MARINE INSURANCE
COMPANY; BATESVILLE INSURANCE AGENCY, INC. d/b/a
COMMUNITY INSURANCE PROFESSIONALS, INC.;
and SWETT & CRAWFORD**                                      **DEFENDANTS**

## OPINION AND ORDER

Before the Court is defendant Swett & Crawford's ("Swett") motion for summary judgment (Dkt. No. 61). Plaintiff Commercial Credit Group, Inc. ("CCG"), has responded to the motion (Dkt. No. 65), and Swett has replied (Dkt. No. 76). For the following reasons, the Court grants Swett's motion for summary judgment and enters judgment in favor of Swett on CCG's claims.

### I. Factual Background

Unless otherwise noted, the following facts are taken from Swett's statement of material facts as to which there is no genuine dispute to be tried and CCG's counter-statement of disputed material facts (Dkt. Nos. 63; 67).

Uniserve, LLC, ("Uniserve"), a scrap metal dealer located in Newport, Arkansas, maintained various pieces of large construction equipment as part of its job activities (Dkt. No. 63, ¶ 1). The sole partner and managing member of Uniserve was Kevin Statler (*Id.*, ¶ 2). Uniserve maintained a property interest in a 2004 Caterpillar Material Handler, Serial Number CDY00316 ("CDY316") (*Id.*, ¶ 3). CCG maintained a perfected security interest in CDY316 (Dkt. Nos. 63, ¶ 4; 67, ¶ 1). On October 27, 2009, Mr. Statler, on behalf of Uniserve, signed a security agreement

related to the financing of CDY316 and other pieces of equipment, including a 2004 Caterpillar Material Handler with serial number CDY00308 ("CDY308") (Dkt. Nos. 63, ¶ 5; 67, ¶ 3). The security agreements between CCG and Uniserve required Uniserve to obtain insurance on CCG's collateral and additionally required that the insurance policy contain a standard or union mortgage clause designating CCG as an additional insured or lender loss payee (Dkt. No. 67, ¶ 2). The security agreements further required Uniserve to provide CCG with a copy of the insurance policy naming CCG as an additional insured (Dkt. No. 63, ¶ 6). Swett contends that Uniserve never provided CCG with a copy of an all risks insurance policy naming CCG as an additional insured (*Id.*, ¶ 7).

In order to obtain the insurance policy, defendant Batesville Insurance Agency, Inc. d/b/a Community Insurance Professionals, Inc. ("Community") used the wholesale insurance brokering services of Swett (*Id.*, ¶ 8). Community is a retail insurance broker/agent and Swett is a wholesale insurance broker (*Id.*, ¶¶ 9, 10). As a wholesale insurance broker, Swett worked as a middleman between the retail agent and potential insurers to provide Uniserve with an insurance policy fitting its needs (*Id.*, ¶ 11). In its capacity as a wholesale insurance broker, Swett arranged for the issuance by AGCS Marine Insurance Company ("AGCS") of AGCS Policy #MXI93017792 ("the Policy"), naming Uniserve and its various entities as the insured (Dkt. Nos. 63, ¶ 14; 67, ¶ 4). The Policy term was April 28, 2010, through April 28, 2011 (Dkt. No. 63, ¶ 18). The Policy covered both CDY316 and CDY308 (Dkt. No. 67, ¶ 7). CDY316 was covered by $474,409.00 in insurance, and CDY308 was covered by $441,946.00 in insurance (*Id.*, ¶¶ 12, 13). The application for the insurance Policy included an additional interest schedule which identified CCG as loss payee on the policy (*Id.*, ¶ 5).

The Policy contains a loss payee provision that states AGCS will pay both the insured and a loss payee, "[i]f a loss payee is named in the Declarations." (*Id.*, ¶ 17). The Policy did not list CCG as a loss payee (*Id.*, ¶ 19). On April 29, 2010, Swett issued a confirmation of coverage bound, noting the blanket loss payee endorsement on the Policy (Dkt. No. 67, ¶ 8). Swett contends that, at no time during the process of obtaining a policy of insurance for Uniserve, did any representative of Swett communicate with Kevin Statler, any other representative of Uniserve, or any representative of CCG (Dkt. No. 63, ¶¶ 12, 13). Swett submits that neither Community nor Uniserve ever provided any information to AGCS or Swett which indicated that CCG was to be a loss payee on the Policy (*Id.*, ¶¶ 15, 16).

Community provided Uniserve with an Evidence of Property Insurance form which states that the "policies of insurance listed below have been issued to the insured name above [Uniserve] for the policy period indicated [04/20/2010-04/28/2011]." (Dkt. No. 67, ¶ 9). The Evidence of Property Insurance form lists CCG as an additional interest and the box for loss payee is marked (Dkt. No. 1, Ex. 2). CCG submits that the Evidence of Property Insurance form provided confirmation that Uniserve obtained insurance covering both CDY316 and CDY308 and naming CCG as loss payee (Dkt. No. 67, ¶¶ 10, 11). CCG further submits that Endorsement 001 included in the Policy notes that loss payees were added under the Policy (*Id.*, ¶ 14). CCG submits that it was the sole loss payee under the Policy during the initial term (*Id.*, ¶ 15).

On August 29, 2010, during the Policy term, CDY316 was completely destroyed by fire (Dkt. No. 63, ¶ 20). Community prepared a property loss notice and provided notice of the loss to Swett on August 30, 2010 (Dkt. Nos. 63, ¶ 21; 67, ¶ 26). Swett then forwarded the notice of loss to AGCS (Dkt. No. 63, ¶ 22). Swett contends that after forwarding the notice of loss to AGCS, it played no further role in the handling of the claim (*Id.*).

3

On November 5, 2010, Claire Fox, claims professional for AGCS, emailed Christian Michaels, attorney for Mr. Statler of Uniserve, inquiring about the name of Uniserve's loss payee for CDY316 (Dkt. No. 63, ¶ 23). On December 9, 2010, Mr. Michaels responded to Ms. Fox and stated that CDY316 did not have a loss payee (*Id.*, ¶ 24). Also on December 9, 2010, Mr. Michaels forwarded to Ms. Fox a sworn statement in proof of loss which was signed by Mr. Statler (*Id.*, ¶ 25). One of the representations contained within the sworn statement was: "No other person or persons had any interest therein [as to material handler 316] or encumbrance thereon, except:" (*Id.*). The response given to this question was "n/a." (*Id.*). On December 13, 2010, AGCS issued check #000010:651 in the amount of $212,365.45 to Mr. Statler and to "Uniserve, LLC, UIMG, et al." (*Id.*, ¶ 26). The proceeds were not made jointly payable to CCG (Dkt. No. 67, ¶ 23). CCG submits that Cari Ellenberger, a Legal Specialist for AGCS, later questioned the payment to the insured rather than the loss payee, asking: "Did we have the Acord? It seems to me we should have known?" (*Id.*, ¶ 24).

On February 16, 2011, CDY308 was destroyed in a fire (*Id.*, ¶ 25). Community prepared a property loss notice and provided notice of the loss to Swett (*Id.*, ¶ 26). AGCS issued payment in the amount of $431,946.00 on July 18, 2011 (*Id.*, ¶ 29). The payment was made to both Uniserve and CCG (*Id.*). CCG received insurance proceeds for the loss of CDY308 but did not receive insurance proceeds for the loss of CDY316 even though both machines were covered by the initial Policy (*Id.*, ¶ 30). CCG contends that it knew generally that Mr. Statler had experienced a fire on another piece of equipment and received insurance proceeds, but CCG submits that it did not know that the loss was related to its collateral (Dkt. No. 67, ¶ 31). CCG contends that it did not know that its loans to Uniserve were no longer secured by the CDY316 and continued to extend financing to Uniserve based on the value of the collateral (*Id.*, ¶ 33).

**II.    Standard Of Review**

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**III.    Discussion**

CCG alleges five causes of action: (1) breach of contract; (2) specific performance; (3) promissory estoppel; (4) conversion; and (5) negligence (Dkt. No. 1, at 7-10). Swett argues that CCG lacks the capacity to bring claims against Swett as the wholesale broker of the insurance policy (Dkt. No. 62, at 4). Swett further argues that, should the Court find that CCG has standing to bring its claims against Swett, those claims are barred by the statute of limitations. Swett filed its motion for summary judgment and, pursuant to Federal Rule of Civil Procedure 10,

incorporated into its brief in support of its motion for summary judgment the motion for summary judgment and brief in support submitted by AGCS. For the following reasons, the Court grants the motion.

### A. Standing

As a preliminary matter, the Court finds that CCG, as an alleged loss payee on the Policy, generally has the capacity to bring claims. A loss payee is an "insured" in the sense that it can sue to enforce a policy under which it would ultimately be paid. *See Newcourt Financial Insurance v. Canal Insurance Co.,* 15 S.W.3d 328, 333 (Ark. 2000) (citing *Huddleston v. Home Life Ins. Co. of New York,* 34 S.W.2d 221, 222 (Ark. 1931)). When a policy contains a standard or union mortgage clause, such as is the case here, it is considered that the insurer has entered into a separate contract with the mortgagee just as if the latter had applied for insurance entirely independent of the mortgagor. *Fireman's Fund Insurance Co. v. Rogers*, 712 S.W.2d 311, 314 (Ark. 1986); *Dalrymple v. Royal-Globe Insurance Co.*, 659 S.W.2d 938, 940 (Ark. 1983); *Lucas County Bank of Toledo v. Am. Cas. Co.,* 256 S.W.2d 557 (Ark. 1953) (discussing the difference between open and standard loss payee clause language and emphasizing that standard clauses could not be invalidated by any act of the mortgagor/insured). In general, while a loss payee is not afforded all the rights afforded an insured under a policy of insurance, a loss payee is able to bring an action to enforce its claim to insurance proceeds independent of the actions of the insured. *Newcourt Financial Insurance*, 15 S.W.3d at 334. The Court will consider CCG's claims as they relate to Swett and address below the question of whether Swett is a proper party to CCG's claims.

### B. Statute Of Limitations

Swett contends that, under Arkansas' "gist test," CCG's claims sound entirely in tort and that the applicable three year statute of limitations bars all of CCG's claims. Swett contends that

6

CCG's complaint is actually a tort action against defendants for not conducting a sufficiently diligent investigation into the identity of the loss payee for CDY316. In response, CCG maintains that, because its claims arise under a policy of insurance, Arkansas Code Annotated § 23-79-202 with its corresponding five-year limitations period governs all of its claims.

"To determine the cause of action, we look to the facts alleged in the complaint to ascertain the area of law in which they sound." *Farris v. Conger*, 512 S.W.3d 631, 634 (Ark. 2017) (quoting *Sturgis v. Skokos*, 977 S.W.2d 217, 220 (Ark. 1998)). The Court then looks to the "gist" of the action to determine which statute of limitations applies. *Farris*, 512 S.W.3d at 634 (citing *McQuay v. Guntharp*, 963 S.W.2d 583, 585 (Ark. 1998)). In order to state a cause of action for breach of contract, the complaint need only assert the existence of a valid and enforceable contract between plaintiff and defendant, the obligation of defendant thereunder, a violation by defendant, and damages resulting to plaintiff from the breach. *Rabalaias v. Barnett*, 683 S.W.2d 919, 921 (Ark. 1985) (citation omitted). For a contract statute of limitations to apply, there must be a breach of a specific promise. *See Farris*, 512 S.W.3d at 634 ("When the complaint contains a claim for breach of contract, the question is whether there is a specific promise that transforms the gist of the action from one for negligence into one for breach of the written agreement."); *Sturgis*, 977 S.W.2d at 220. CCG submits that defendants breached the insurance Policy by not giving CCG notice of the claim on CDY316, and by failing to pay the amounts due to CCG as the sole loss payee under the Policy (Dkt. No. 1, ¶ 34). The Court determines that CCG's complaint alleges breach of a specific promise sufficient to state a claim for breach of contract.

In general, Arkansas applies a three-year statute of limitations to tort actions and a five-year statute of limitations to actions based upon written contracts. *See* Ark. Code. Ann. § 16-56-

105; Ark. Code. Ann. § 16-56-11. Additionally, and specific to suits against insurers, Arkansas Code Annotated § 23-79-202 provides that:

> (a) An action may be maintained in the courts of this state by an insured or any other person on his or her behalf to recover on any claim or loss arising under a policy of insurance on property or life against the insurer issuing the policy or against the sureties on any bond filed by the insurer as a condition precedent to its right to do business in this state, at any time within the period prescribed by law for bringing actions on promises in writing.
>
> (b) Any stipulation or provision in the policy or contract requiring the action to be brought within any shorter time or be barred is void.

Ark. Code Ann. § 23-79-202.

CCG submits that all of its claims in this action arise under a policy of insurance; thus, Arkansas Code Annotated § 23-79-202 and the corresponding five year statute of limitations apply to all of its claims. The Court rejects CCG's assertion regarding the reach of this statute. The Court finds that Arkansas Code Annotated § 23-79-202 does not apply to Swett as the wholesale insurance broker.

Section 23-79-202 provides for a five-year statute of limitations by an insured, or any other person on his or her behalf, arising under a policy of insurance against the insurer issuing the policy. *See* Ark. Code Ann. § 23-79-202. Swett is not the insurer in this action. *See e.g. Shelter Mut. Ins. Co. v. Nash*, 184 S.W. 3d 425, 428 (Ark. 2004) (addressing the question of when an insured may bring a claim against his or her insurer and explaining that, "[b]ecause Nash's suit against Shelter is clearly an action by an insured against the insurer to recover a claim arising under a policy of insurance, we hold that the five-year statute of limitations applies."); *see also Simmons Foods, Inc. v. Indus. Risk Insurers*, 863 F.3d 792 (8th Cir. 2017) (applying five-year statute of limitations pursuant to § 23-79-202 in an action by an insured against the insurance company); *Graham v Hartford Life & Accident Ins. Co.,* 677 F.3d 801, 804 (8th Cir. 2012) (same); *Dodge v.*

*Hartford Life & Accident Ins. Co,* 4:16-CV-00719-BRW, 2017 U.S. LEXIS 11928 (E.D. Ark. Jan. 30, 2017) (same); *Riggs v. Valley Forge, Ins., Co.*, No. 08-03058, 2009 U.S. Dist. LEXIS 89378 (W.D. Ark. Sept. 28, 2009) (same). The Court construes § 23-79-202 so that no word is left void, superfluous, or insignificant, and gives meaning and effect to every word in the statute, if possible. *See Ward v. Doss*, 205 S.W. 3d 767, 770 (Ark. 2005). Because Swett is not an insurer as required by the statute, the Court finds that Arkansas Code Annotated § 23-79-202 does not govern CCG's claims against Swett. Having rejected this argument, the Court will address each of CCG's claims and the appropriate statute of limitations in turn.

### 1. Breach Of Contract

The Court finds that Swett is not a party to the contract that forms the basis of CCG's breach of contract claim and, thus, not liable for the alleged breach of contract. To prevail on a breach of contract claim under Arkansas law, a plaintiff must show that: (1) the plaintiff and defendant had a contract; (2) the contract required the defendant to perform a certain act; (3) the plaintiff did what the contract required; (4) the defendant did not do what the contract required; and (5) the plaintiff was damaged by the breach. *See Foreman Sch. Dist. No. 25 v. Steele*, 61 S.W.3d 801, 807 (Ark. 2001). In its complaint, CCG contends that defendants breached the contract of insurance with CCG by failing to notify CCG of the claim, by failing to endorse the claim proceeds to CCG as loss payee, and by failing to pay promptly the amounts due to CCG under the Policy (Dkt. No. 1, ¶ 34). As such, CCG submits that defendants are in material default of the Policy of insurance and seeks to recover damages in the amount of $212,365.45, or the amount paid on the claim paid to Uniserve on the claim under the Policy (*Id.*, ¶ 37).

Swett is not a party to the contract CCG alleges was breached. Arkansas recognizes the general rule that, where an agent names its principal and does not exceed his authority when

9

contracting on the principal's behalf, the agent is not personally liable upon the contract unless the agent agrees to be. *McCullough v. Johnson*, 816 S.W.2d 886, 887 (Ark. 1991). Insurance agents are not treated any differently with respect to this rule. *Vandiver Food Stores v. Insurance Co. of N. Am.,* 909 F. Supp. 618, 625 (E.D. Ark. 1995). Based on the allegations in CCG's complaint, Swett, as the wholesale insurance broker, is not liable for breach of the Policy of insurance because Swett was not a party to the contract. *See id*. at 625 (citing *Leather's Best, Inc. v. S.S. Mormaclynx*, 451 F.2d 800, 808 (2nd Cir. 1971) (finding an agent, acting within the scope of its authority, is not liable *ex contractu* for the breach of the contract between its disclosed principal and a third party, even when the breach was the result of its own wrongful act)). CCG points to no record evidence from which a reasonable juror could conclude that Swett intended to be bound. Despite the fact that Swett served as the wholesale broker and worked to procure the Policy, the Court finds Swett is not a party to the Policy alleged to be breached as set forth in the complaint.

The only written contract cited in CCG's complaint is the insurance Policy between Uniserve and AGCS (Dkt. No. 1). CCG's breach of contract claim concerns an alleged breach of that Policy (*Id*.). Despite that, CCG argues that it is entitled to bring a claim for breach of contract against Swett as an intended third-party beneficiary to the Policy. CCG is correct that, in Arkansas, a party may recover damages for breach of contract when that party is a third-party beneficiary to the contract. *Stilley v. James,* 60 S.W.3d 410, 415 (Ark. 2001); *Little Rock Wastewater Util. v. Larry Moyer Trucking*, 902 S.W. 2d 760, 763 (Ark. 1995) ("A contract is actionable by a third party when there is substantial evidence of a clear intention to benefit that third party."). Swett is not a party to the contract alleged to have been breached, and thus not a proper party against which to bring a claim for breach of contract regardless if CCG is or is not a third party beneficiary under

the contract. CCG's argument pertaining to its alleged status as a third party beneficiary is misplaced.

There is no evidence in the record of a contract between Swett and Uniserve with CCG as a loss payee, much less a written contract subject to a five-year statute of limitations. CCG's complaint claims breach of the insurance Policy between AGCS and Uniserve (Dkt. No. 1, ¶ 34 ("The Defendants are in material default of the Policy. The Defendants breached the contract of insurance with CCG by failing to notify CCG of the Claim, by failing to endorse the Claim proceeds to CCG as loss payee, and by failing to promptly pay the amounts due to CCG under the Policy. In addition, Allianz breached the contract of insurance by failing to properly supervise its agents/brokers. . . .")).

While the Court finds that the five-year statute of limitations set forth in Ark. Code Ann. § 16-56-111 and made applicable to policies of insurance between insureds and insurers applies to the claimed breach of the insurance Policy between AGCS and Uniserve, the Court finds that Swett is not a party to that contract and thus not liable for breach of that contract. The Court grants summary judgment in favor of Swett on CCG's breach of contract claim.

### 2. Specific Performance

CCG contends that, because it seeks a money judgment against Swett and the other defendants, specific performance is an appropriate remedy for breach of contract (Dkt. No. 53, ¶¶ 39-41). Specific performance is an equitable remedy which compels performance of a contract on the precise terms agreed upon by the parties. *Dossey v. Hanover, Inc.*, 871 S.W.2d 67, 69 (Ark. Ap. 1995). However, specific performance cannot be decreed where there is no duty to perform. Because Swett was not a party to the Policy, CCG's specific performance claim against Swett does

not survive summary judgment. The Court grants Swett's motion for summary judgment as to CCG's claim for specific performance.

### 3. Promissory Estoppel

Promissory estoppel applies when: (1) defendant made a promise; (2) defendant should have reasonably expected plaintiff to act or refrain from acting in reliance on the promise; (3) plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and (4) injustice would result from refusal to enforce the promise. *Fairpark, LLC v. Healthcare Essentials, Inc.*, 381 S.W.3d 852, 859 (Ark. 2011); Arkansas Model Jury Instructions—Civil 2444 (2016). Promissory estoppel only applies when the elements of a contract cannot be shown. *Skallerup v. City of Hot Springs*, 309 S.W.3d 196, 201 (Ark. 2009); *see also Mickens v. Correctional Medical Services., Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) (noting that under Arkansas law, "promissory estoppel is an alternative theory which is not available when an actual contract exists"). CCG contends that it relied on written representations and promises to its detriment (Dkt. No. 1, ¶ 43). CCG specifically alleges that "[d]efendants made written representations and promises to CCG that its interest in Uniserve's equipment was covered as the loss payee under the Policy." (*Id.*). CCG contends that Swett should have reasonably expected that CCG would rely on the representation that it was covered as a loss payee (*Id.*, ¶ 45).

The statute of limitations for promissory estoppel claims is three years. *See* Ark. Code Ann. § 16–56–105 (Repl. 2005); *Crutchfield v. Tyson Foods, Inc.*, 514 S.W.3d 499, 502 (Ark. App. 2017). The statute of limitations begins to run when the cause of action accrues. For a breach of contract action, the cause of action accrues and the statute of limitations begins to run "when the plaintiff could have first maintained the action to a successful conclusion." *Dupree v. Twin City Bank,* 777 S.W.2d 856, 858 (Ark. 1989) (citation omitted); *Hunter v. Connelly,* 446 S.W.2d

654, 657 (Ark. 1969) (cause of action accrues moment right to commence an action comes into existence); *Oaklawn Bank v. Alford,* 845 S.W.2d 22, 23 (Ark. App. 1993) (cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and "occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached."). A cause of action for a tort claim accrues "the moment the right to commence an action comes into being, and the statute of limitations commences to run from that time." *Quality Optical of Jonesboro, Inc. v. Trusty Optical, L.L.C.*, 225 S.W.3d 369, 372 (Ark. 2106); *Chalmers v. Toyota Motor Sales, USA, Inc.,* 935 S.W.2d 258, 261 (Ark. 1996) ("The limitations period found in Ark. Code Ann. § 16-56-105(3) begins to run when there is a complete and present cause of action, and, in the absence of concealment of the wrong, when the injury occurs, not when it is discovered" (internal citation omitted)). Once it appears from the face of the complaint that the action is barred by the applicable statute of limitations, the burden is on plaintiff to prove by a preponderance of the evidence that the limitations period is tolled. *Chalmers,* 935 S.W.2d at 261.

On December 31, 2009, Uniserve applied for an insurance policy through Community (Dkt. No. 54, ¶ 4). An additional interest schedule identifying CCG as a loss payee was attached to the application (*Id.*). On April 28, 2010, the Policy was issued by AGCS. Swett issued a confirmation of coverage on April 29, 2010. On May 20, 2010, Community issued an Evidence of Property Insurance form (*Id.*, ¶ 9). The form lists CCG as an additional interest holder as a loss payee (*Id.*, ¶ 10). On August 29, 2010, CDY316 was destroyed by fire. Community issued a property loss notice on August 30, 2010, with no mention of CCG as an interest holder. Swett forwarded the notice to AGCS. On December 9, 2010, Ms. Fox, claims professional for AGCS, emailed Mr. Michaels, attorney for Mr. Statler of Uniserve, asking for the name of Uniserve's loss

13

payee under the Policy. Mr. Michaels responded to Ms. Fox, stating that there was no loss payee for CDY316. On December 9, 2010, Mr. Michaels forwarded a sworn statement in proof of loss signed by Mr. Statler of Uniserve to Ms. Fox at AGCS. The sworn statement represented that there were no additional interests as to CDY316. On December 13, 2010, AGCS issued a check for the loss to Uniserve.

The Court finds that CCG's claims accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve. This is the date upon on which a complete and present cause of action accrued as to CCG and the date upon which CCG's right to commence an action came into being. CCG brought its claim on August 27, 2015, nearly five years after its claim accrued. As such, CCG's claim for promissory estoppel is time barred.

However, CCG alleges that Swett's alleged concealment of material facts amounts to fraudulent concealment, thus tolling the statute of limitations (Dkt. No. 53, at 12-13). Fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *Miles v. A.O. Smith Harvestore Prods, Inc*., 992 F.2d 813, 816 (8th Cir. 1993). In Arkansas, fraudulent concealment is often described as follows:

> No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in a way that it conceals itself. And if the plaintiff, by reasonable diligence, might have detected the fraud he is presumed to have had reasonable knowledge of it.

*Wilson v. General Electric Capital Auto Lease, Inc.,* 841 S.W. 2d 619, 620-21 (Ark. 1992); *see also Shelton v. Fiser,* 8 S.W.3d 557, 562 (Ark. 2000).

CCG does not allege affirmative acts of fraud by Swett. Rather, CCG alleges that Swett committed fraudulent concealment by its alleged failure to speak. "[I]n some situations, the law

14

imposes upon a party a duty to speak rather than to remain silent in respect of certain facts within his knowledge, and the failure to speak is the *equivalent of fraudulent concealment* and amounts to fraud just as much as an affirmative falsehood." *Floyd v. Koenig*, 274 S.W.3d 339, 342 (Ark. App. 2008) (citing *Camp v. First Fed. Savings & Loan*, 671 S.W.2d 213, 215 (Ark. App. 1984)). This rule is limited to special circumstances, such as a confidential relationship. *Floyd,* 274 S.W.3d at 342; *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128, 134 (Ark. 1983); see *also Union Nat. Bank of Little Rock v. Farmers Bank*, 786 F.2d 881, 887 (8th Cir. 1996) (quoting *Hanson Motor Co. v. Young*, 265 S.W.2d 501, 504 (Ark. 1954) ("The duty of disclosure also arises where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not.")). Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment. *See Ward v. Worthen Bank & Trust Co., N.A*., 681 S.W. 2d 365, 368 (Ark. 1984); *Berkeley Pump Co.,* 653 S.W.2d at 134 ("The general rule is to the contrary, and ordinarily, absent affirmative fraud, a party, in order to hold another liable in fraud [ ] must seek out the information he desires and may not omit inquiry and examination and then complain that the other did not volunteer information. . . . We find nothing in the abstract suggesting circumstances from which that rule of law might be found applicable. If fraud exists, whether affirmatively or by concealment, it ought not to be difficult to isolate and cite it."). To determine whether special circumstances exist, the Court looks to all the circumstances of the case and compares "the facts not disclosed with the object and end sought by the contracting parties . . . ." *Camp*, 671 S.W.2d at 216.

While a fiduciary duty in the strict sense of the term is not required to find special circumstances, when one party is in a position to have and exercise control over another who reposes confidence in him, a confidential or similar relationship may exist to support a finding of fraudulent concealment. *Camp*, 671 S.W. 2d at 216. In *Camp*, the appellant purchased a newly constructed home from a builder who had borrowed construction money from appellee bank (*Id.*, at 215). Unbeknownst to appellant, the house was in a flood plain (*Id.*). There was testimony in the record that the appellant had recently moved to the area, signed the purchasing paperwork in the appellee bank's office, relied considerably on the appellee bank's representations throughout the negotiation process, and that the appellee bank had a pecuniary interest in the outcome of the sale (*Id.*, at 215-216). The court found this sufficient evidence to reverse the lower court's directed verdict on the issue of fraudulent concealment and held that a jury should have the opportunity to consider whether a confidential or similar relationship existed between appellant and the bank, thereby imposing a duty upon the bank to speak (*Id.*, at 216). The facts here differ from the facts in *Camp*.

Based on the record evidence, drawing all reasonable inferences in favor of CCG, no reasonable juror could conclude that special circumstances existed giving rise to a duty to speak on the part of Swett. CCG contends that, when Swett issued the confirmation of coverage with a blanket loss payee endorsement, Swett represented that CCG was added as a loss payee under the Policy (Dkt. No. 66, at 11). CCG further contends that Swett stayed involved in the claim when it sent the initial property loss notice for the damage to CDY316 to AGCS and requested that AGCS provide it with further information once the claim file was set up (*Id.*). CCG alleges that the property loss notice did not identify CCG as a loss payee despite Swett's knowledge of CCG's interest (*Id.*).

The record does not support the conclusion that special circumstances or a confidential relationship existed between the parties. *See Floyd*, 274 S.W. 3d at 342-43 (finding facts alleged sufficient to support the application of fraudulent concealment where a patient's long-term primary care physician advised patient to give child up for adoption, arranged for the adoption, and then disclosed patient's medical records and personal information to adoptive parents). Without special circumstances or a confidential relationship, no duty arises.

Based on the record evidence, construing all reasonable inferences in favor of CCG, no reasonable juror could conclude that there was fraudulent concealment on the part of Swett in handling the claim for CDY316. Further, it does not appear from the record that CCG exercised reasonable diligence in detecting the alleged fraud. *Wilson*, 841 S.W.2d at 620-21. From the record, it appears that CCG did not have a copy of the Policy as required by its security agreement with Uniserve from which to determine its coverage as a named loss payee (Dkt. Nos. 46, at 8; 63, ¶ 7).

For these reasons, the Court determines that the three year statute of limitations bars CCG's promissory estoppel claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of Swett on CCG's promissory estoppel claim.

### 4. Conversion

CCG's claim for conversion is barred by the statute of limitations. CCG contends that, as a loss payee under the Policy, it was entitled to proceeds from CDY316 and that issuance of the funds solely to Uniserve amounts to conversion. Arkansas Code Annotated § 16-56-105(6) provides a three-year statute of limitations for "taking or injuring any goods or chattels." The Court finds that CCG's claim for conversion of the insurance proceeds for CDY316 accrued at the latest on December 13, 2010, when the check for CDY316 was issued by AGCS to Uniserve

only. This is the date upon on which a complete and present cause of action accrued as to CCG, and the date upon which CCG's right to commence an action came into being. *Chalmers*, 935 S.W. 2d at 261. CCG brought its conversion claim on August 27, 2015, nearly five years after its claim accrued. As noted above, and based on the record before the Court, no reasonable juror could conclude that there was fraudulent concealment. Therefore, the Court grants summary judgment in favor of Swett on CCG's claim for conversion.

### 5. Negligence

CCG alleges that the defendants so negligently operated their respective insurance companies that the existence of a loss payee was undiscovered or ignored by defendants (Dkt. No. 1, ¶ 54). CCG alleges that the defendants were negligent in failing to procure, effectuate, or extend insurance coverage as promised and represented to CCG (*Id*., ¶ 55). CCG contends that the defendants owed CCG a duty to provide the standard of care that an ordinary prudent person would provide in similar circumstances and that defendants breached that duty (*Id*., ¶ 56). The Court finds that the applicable statute of limitations for claims of negligence is three years. As such, CCG's claim for negligence against Swett is barred by the statute of limitations. *See* Ark. Code Ann. § 16-56-105; *Tony Smith Trucking v. Woods & Woods, Ltd.*, 55 S.W.3d 327, 330 (Ark. App. 2001); *Gibson v. Herring*, 975 S.W.2d 860, 862 (Ark. App. 1998).

CCG contends that the three-year statute of limitations should be tolled because Swett purportedly concealed material facts by failing to speak (Dkt. No. 53, at 12-13). As the Court explained above, the general rule of fraudulent concealment requires "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *Shelton,* 8 S.W.3d at 562. Failure to speak is the equivalent of fraudulent concealment only in circumstances involving a confidential

relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment. *See Ward,* 681 S.W. 2d at 368; *Berkeley Pump Co.,* 653 S.W.2d at 134. This rule is applicable under "special circumstances . . . such as a confidential relationship." *Floyd,* 274 S.W.3d at 342 (citing *Berkeley Pump Co.,* 653 S.W.2d at 134).

Swett was the wholesale insurance broker contacted by Community to locate an insurance policy for Uniserve. Swett served as an intermediary wholesale broker. There is no record evidence of any contact between Swett and CGG. CCG alleges that Swett continued to remain integrally involved in the administration of the Policy well past the date of its issuance (Dkt. No. 66, at 12). CCG points to email correspondence between Barbara Hannon of Swett and Wendee Lester at Community regarding the claim for CDY316 and from Ms. Hannon to AGCS forwarding the notice of loss for CDY316 (Dkt. No. 66-1, at 95-96). CCG also points to email correspondence from Swett to Uniserve in April 2010 regarding renewal of the Policy (Dkt. No. 66-1, at 104-05). The record simply does not support the conclusion that a confidential relationship existed between the parties. *See Floyd*, 274 S.W. 3d at 342-43. No reasonable juror could conclude, based on the record evidence with all reasonable inferences drawn in favor of CCG, that there were special circumstances, was a confidential relationship, or was fraudulent concealment on the part of Swett.

Therefore, the Court determines that the three year statute of limitations bars CCG's negligence claim. *See* Ark. Code Ann. § 16-56-105. As such, the Court grants summary judgment in favor of Swett on CCG's negligence claim.

**IV.  Conclusion**

The Court grants summary judgment to defendant Swett as to all of CCG's claims (Dkt. No. 45). The Court dismisses with prejudice all claims against Swett.

So ordered this 30th day of March, 2018.

_____
Kristine G. Baker
United States District Court Judge